IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF MISSOURI
SOUTHERN DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 11-3083-S-CR-C-RED |
| | ) | |
| JAMES EARL GUNNELL, | ) | |
| | ) | |
| Defendant. | ) | |

### REPORT AND RECOMMENDATION

On September 28, 2012, defendant James Earl Gunnell (hereinafter "Gunnell") filed a motion to suppress evidence. The motion alleges the evidence seized from his motorcycle was pursuant to a warrantless, nonconsensual search and, therefore, should be suppressed. The Government has responded in opposition. A hearing on the motion was held on November 28, 2012.[1]

**Facts**

Defendant Gunnell was the subject of a drug investigation. Agents with the Drug Enforcement Agency (DEA) and Task Force Officers (TFOs) with the DEA had started receiving information in August of 2011 that Gunnell was a multi-pound dealer of methamphetamine in and around the Greene County, Missouri, area. Based on the information received, law enforcement was able to establish where Gunnell lived and surveillance was set up on his residence.

On August 25, 2011, at approximately 1:00 p.m., TFO Justin Arnold observed Gunnell riding a motorcycle on Walnut Street in Springfield, Missouri. Gunnell was driving a late 1990 or early 2000 model Kawasaki motorcycle. TFO Arnold's supervisor, DEA Special Agent Craig, who was also surveilling, observed Gunnell park the motorcycle in the parking lot of an apartment complex building just off Walnut Street, and walk into an apartment in either building 608 or 618. Surveillance was maintained on Gunnell's motorcycle. TFO Arnold contacted TFO

---

[1] This case was referred to the undersigned United States Magistrate Judge for processing in accord with the Magistrate Act, 28 U.S.C. § 636, and L.R. 72.1.

Eric Hawkins, who is also an officer with the Springfield Police Department (SPD), and informed him of the situation. TFO Hawkins then contacted SPD Sgt. David Meyer and informed him that Gunnell was under surveillance. Because of concern that Gunnell was involved in drug trafficking, Sgt. Meyer contacted SPD Canine Officer Kyle Tjelmeland and requested that he be in the general area to assist, if necessary.

At approximately 2:00 p.m., Gunnell was seen returning to his motorcycle with a blue bag that he placed in the right saddlebag. Gunnell left the apartment complex and turned left on to Walnut Street. TFO Arnold followed Gunnell at a distance, and at the intersection of Walnut and 8th Streets, observed Sgt. Meyer turn on to Walnut Street behind Gunnell. Sgt. Meyer had been requested by the TFOs to attempt to develop probable cause for a traffic violation so Gunnell's motorcycle could be stopped and a consent to search the motorcycle could be requested of Gunnell. Sgt. Meyer was also advised that Gunnell might be in possession of a weapon. After following and pacing Gunnell's vehicle for a distance of a little less than one mile, Sgt. Meyer paced Gunnell's motorcycle and determined he was speeding in excess of ten miles an hour over the 30-mph speed limit. Sgt. Meyer conducted a traffic stop of Gunnell's vehicle on Walnut Street just before the Kansas Expressway.

As soon as Sgt. Meyer stopped Gunnell's vehicle, he walked up to Gunnell and asked him for his identification. Gunnell didn't have his identification, but verbally gave Sgt. Meyer his identifying information. Two backup officers arrived at this time, and Sgt. Meyer handed Gunnell's information to the assisting officers to determine if Gunnell had any outstanding warrants and to check the status of his driver's license. While Gunnell's identification information was being checked, Sgt. Meyer asked Gunnell to step off of his motorcycle. Sgt. Meyer then conducted a pat-down search of Gunnell. Sgt. Meyer asked Gunnell where he was going and whether he had ever been arrested. Gunnell told Sgt. Meyer he had previously been arrested and incarcerated for drug offenses in the State of Washington. Sgt. Meyer then conducted a pat-down search of Gunnell's person. Sgt. Meyer also asked Gunnell for consent to search his motorcycle. Gunnell responded in the negative to the request for a consent to search. After approximately five minutes, it was determined that Gunnell's driver's license did not have a motorcycle endorsement. At this time, Sgt. Meyer detained Gunnell in handcuffs.

Canine Officer Kyle Tjelmeland, Springfield Police Department, testified he arrived on scene, with his canine partner, Raider, approximately five to ten minutes after hearing over the

police radio that Sgt. Meyer was attempting to stop Gunnell's motorcycle. Officer Tjelmeland and his drug-detection dog, Raider, are certified as a Narcotics Detector Drug Team. Raider alerts to five different drug substances: cocaine, heroin, marijuana, methamphetamine and ecstasy. Officer Tjelmeland attended a 13-week training course. He also trains four times each month and is certified once a year. Raider is also certified.

Officer Tjelmeland walked Raider past the west side of the motorcycle and then the south side of the motorcycle. When near the rear of the motorcycle, Raider alerted on the saddlebag by biting and scratching. Raider is an aggressive indicator dog, and is trained to bite and scratch when illegal narcotics are indicated.

Officer Tjelmeland and Sgt. Meyer then conducted a search of the motorcycle based on the dog's indication of the odor of drugs. Inside the right rear saddlebag, Sgt. Meyer located a blue bag that contained nearly one pound of 100 percent pure methamphetamine, numerous clear plastic baggies, and a set of digital scales. Sgt. Meyer then placed Gunnell under arrest and transported him to the Greene County Jail.

## **Discussion**

Defendant Gunnell argues that the items taken from his motorcycle saddlebag should be suppressed because they were taken pursuant to a nonconsensual, warrantless search, which was the result of a pretextual stop of his vehicle. Gunnell also challenges the police officer's basis for the stop of his motorcycle, arguing that the officer did not have the proper equipment in his vehicle to determine whether Gunnell was speeding. Gunnell further challenges the canine's positive alert to the saddlebag on his motorcycle. Gunnell argues that an alert by a drug-detection dog was not sufficient to establish probable cause to support the search of his motorcycle.

Upon review of the filings submitted by both Gunnell and the Government, and the evidence presented at the suppression hearing, this Court finds that the search of Gunnell's motorcycle was properly conducted and did not violate Gunnell's rights.

Traffic Stop

"The Fourth Amendment's prohibition against unreasonable searches and seizures requires that an investigatory stop be supported by at least reasonable, articulable suspicion that criminal activity is afoot." United States v. Mendoza, 677 F.3d 822, 827 (8th Cir. 2012). See also Terry v. Ohio, 392 U.S. 1, 30 (1968). "A traffic violation, however minor, provides

probable cause sufficient to satisfy the constitutional reasonableness requirement." United States v. Frasher, 632 F.3d 450, 453 (8th Cir. 2011).

Here, the stop of Gunnell's motorcycle was based on Sgt. Meyer's determination that Gunnell's motorcycle was traveling in excess of the posted speed limit. Sgt. Meyer testified that he was able to pace Gunnell's car with his police vehicle, and was able to determine that Gunnell was traveling in excess of ten miles per hour over the speed limit. Gunnell's suggestion that the officer didn't have the proper equipment in his police vehicle to properly determine Gunnell's speed is not supported by the evidence. While Sgt. Meyer did not have a radar device or camera in his police vehicle, he testified that he used a technique known as pacing a vehicle to determine Gunnell's speed.[2] Sgt. Meyer, a 15-year veteran of the Springfield Police Department, testified that he was very familiar with this technique and had used it many times. This Court finds Sgt. Meyer's testimony credible. Gunnell has failed to come forward with any evidence showing that Sgt. Meyer was not credible, or that use of the pacing technique was not a valid way to determine the speed Gunnell's motorcycle was traveling. The law "requires that police articulate some minimal, objective justification for the investigatory stop," and that standard has been met here. See United States v. Riley, 684 F.3d 758, 763 (8th Cir. 2012). See also, e.g., Mendoza, 677 F.3d at 828 (officer's observation of traffic violations, including not signaling when changing lanes and driving erratically, provided probable cause for the stop of the defendant's vehicle). The traffic violation observed by Sgt. Meyer established probable cause for him to conduct a lawful traffic stop of Gunnell's motorcycle.

Gunnell's argument that the stop was pretextual simply cannot prevail where there is evidence to support that Sgt. Meyer observed Gunnell commit a traffic violation. "Once an officer has probable cause, the stop is objectively reasonable and any ulterior motivation on the officer's part is irrelevant." United States v. Arciniega, 569 F.3d 394, 397 (8th Cir. 2009).

To the extent Gunnell asserts the traffic stop was unduly extended to enable the dog to sniff, this argument is contrary to the evidence. While a constitutionally permissible traffic stop can become unlawful if it is prolonged beyond the time reasonably required to complete that mission, here, there is no evidence to support such a finding. See United States v. Bowman, 660

---

[2] The posted speed limit was 30 miles per hour. Sgt. Meyer accelerated his patrol vehicle to forty miles per hour, and observed that he was not closing the distance between his vehicle and Gunnell's motorcycle.

4

F.3d 338, 343 (8th Cir. 2011). The evidence shows only five to ten minutes passed between the time Sgt. Meyer stopped Gunnell's vehicle and the arrival of the canine to conduct the drug sniff. This amount of time was not beyond the time it took Sgt. Meyer to complete a number of routine tasks related to the traffic violation. See id. (an officer may detain occupants of vehicle while completing a number of routine tasks related to a traffic violation). Sgt. Meyer testified that during the traffic stop, he asked Gunnell for his identification and checked Gunnell's driver's license and warrant statuses. Sgt Meyer also asked general questions of Gunnell like where he was going, and whether Gunnell had ever been arrested. These routine tasks can be somewhat time-consuming for an officer. Id. (tasks such as asking for the driver's license and vehicle registration, as well as inquiring about the driver's destination, route and purpose can be time-consuming). The five to ten minutes that it took for the drug-detection dog to arrive was not beyond what this Court would consider to be a reasonable time to conduct a reasonable and routine investigation during a traffic stop. See Riley at 765 (whether a traffic stop is reasonable in length is a fact question, and there is no per se limit on traffic stops; the court has upheld a three-hour delay). The evidence does not support Gunnell's assertion that the traffic stop of his motorcycle was improperly extended to await the arrival of the drug-detection dog. The evidence shows that Sgt. Meyer's detention of Gunnell was for a justified and reasonable period.

Search of the Vehicle

Gunnell's final argument is that the drug-detection dog search was unreliable and, thus, could not serve as probable cause for the physical search of his motorcycle which led to the discovery of the methamphetamine. The law in the Eighth Circuit on this issue is clear. "Assuming that the drug dog is reliable, a dog sniff resulting in an alert on a container, car, or other item, standing alone, gives an officer probable cause to believe that there are drugs present." Bowman at 345. Here, Gunnell unsuccessfully attempted to challenge the dog's reliability. The canine, Raider, is trained and certified to conduct drug-detection searches; he initially was required to complete a 13-week training program, and thereafter, requires annual certification, as well as ongoing training, with training being conducted four times monthly. Raider's handler, Officer Tjelmeland, also completed a 13-week certification training program,

5
Case 6:11-cr-03083-BCW   Document 46   Filed 12/17/12   Page 5 of 7

as well as ongoing training with his canine as described above.[3]  Officer Tjelmeland testified at length about his and Raider's training and experience in the field.  Despite lengthy questioning by defense counsel on the issue of Raider and false alerting to the presence of narcotics, defendant Gunnell came forward with no evidence showing any type of false alert history regarding Raider.  Rather, Officer Tjelmeland testified that during the time he was partnered with Raider, Raider never had a false alert to the presence of narcotics.[4]  Gunnell came forward with no evidence to show that Raider was unreliable in any way.  Gunnell's cite to two cases pending before the Supreme Court, Florida v. Harris, 71 S.3d 756 (Fl. 2011), Docket No. 11-817 (S. Ct.)[5], and Florida v. Jardines, Docket No. 11-564 (S. Ct.), does not change the law as it exists in the Eighth Circuit today.  Accordingly, there is no basis on which to conclude that Raider is unreliable, or that his alert on Gunnell's motorcycle saddlebag was insufficient to establish probable cause for the physical search of Gunnell's motorcycle.  See Bowman at 345.

## Conclusion

Defendant Gunnell's motion to suppress is without merit.  The Court has considered all the evidence submitted in the pleadings and provided at the hearing.  There was probable cause to support the traffic stop of Gunnell's vehicle; the duration of the traffic stop was reasonable in nature and was not improperly extended; the drug-detection dog called to the scene was trained regularly on conducting sniff searches and was certified as a drug-detection dog; and the dog's alert on Gunnell's motorcycle was sufficient to establish probable cause for the Officer to search Gunnell's motorcycle.  Gunnell's constitutional rights were not violated.

IT IS, THEREFORE, RECOMMENDED that defendant James Earl Gunnell's motion to suppress be denied.  [37]

Counsel are reminded they have fourteen days from the date of receipt of a copy of this Report and Recommendation within which to file and serve objections.  A failure to file and

---

[3] Officer Tjelmeland and Raider were certified to work together as a Narcotics Detector Dog Team on July 13, 2011, by the SPD.  This Polizeispuehund Pruefung Certification is valid through December 2012.  (Government's Exh. #1.)

[4] Officer Tjelmeland was certified and partnered with Raider for several months beginning on July 13, 2011, while Raider's original SPD handler was on leave due to illness of a family member.  Raider had been working the streets with his original SPD handler for several years prior to being partnered with Officer Tjelmeland.

[5] Question presented to Supreme Court is whether an alert by a trained drug-detection dog is sufficient to establish probable cause for search of an automobile.

6

serve exceptions by this date shall bar an attack on appeal of the factual findings in the Report and Recommendation which are accepted or adopted by the district judge, except on the grounds of plain error or manifest injustice.

Dated this 17th day of December, 2012, at Jefferson City, Missouri.

/s/ *Matt J. Whitworth*
MATT J. WHITWORTH
United States Magistrate Judge